UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

L.S. BY AND THROUGH HER
NATURAL PARENT AND GUARDIAN
EMMANUEL SLABAUGH, *et al.*,

    Plaintiffs,

v.

JOSEPH A. SCARANO, *et al.*,

    Defendants.

Case No. 2:10-cv-51
JUDGE GREGORY L. FROST
Magistrate Judge E.A. Preston-Deavers

## OPINION AND ORDER

This matter is before the Court on:

(1) Defendants' Motion *in Limine* to Exclude the Testimony of Christina D. Kelly (ECF No. 59) and Plaintiffs' Memorandum Contra Defendants' Motion *in Limine* to Exclude the Testimony of Christina D. Kelly (ECF No. 68);

(2) Defendants' Motion *in Limine* to Exclude the Testimony of Joseph F. Donnermeyer, Ph.D. (ECF No. 61) and Plaintiffs' Memorandum Contra Defendants' Motion *in Limine* to Exclude the Testimony of Joseph F. Donnermeyer, Ph.D. (ECF NO. No. 71);

(3) Defendants' Motion *in Limine* to Exclude the Testimony of William H. Burke, Ph.D and John Ward, Ph.D. (ECF No. 62) and Plaintiffs' Memorandum Contra Defendants' Motion *in Limine* to Exclude the Testimony of William H. Burke, Ph.D and John Ward, Ph.D. (ECF NO. No. 70); and

(4) Plaintiffs' Motion *in Limine* to Limit the Testimony of John Goebelbecker (ECF No. 66) and Defendants' Memorandum Contra to Plaintiffs' Motion *in Limine* to Limit the

1

Testimony of John Goebelbecker (ECF No. 74).

For the reasons that follow, the Court **DENIES** Defendants' motions and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

## I. Background

This case involves a collision between a horse drawn buggy and a tractor trailer on U.S. Route 62 in Knox County, Ohio that occurred on October 20, 2009. As a result of the collision, L.S. was thrown from the buggy and was pinned under a wheels of the semi truck. L.S. was five years old at the time of the collision and she suffered serious injuries to her arm, leg, and pelvis.

Plaintiffs in this case are L.S. and her parents, Emanuel and Delilah Slabaugh. Plaintiffs have filed claims for relief for negligence, negligence per se, loss of consortium, employer liability, and negligent hiring, training, and entrustment. Defendants are Joseph A. Scarano, the driver of the truck, and A & R Logistics, Inc., Scarano's employer. Defendants have filed counterclaims for negligence on the part of the buggy driver, V.S., L.S.'s sister, and negligence and negligent training, monitoring, and supervision of V.S. by her parents.

## II. Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion *in limine* is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *cf. Luce*, 469 U.S. at 41.

### III. Discussion

In all three of Defendants' motions and in Plaintiffs' motion, the parties request exclusion of certain expert opinions or portions of those opinions pursuant to Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert*, 509 U.S. at 597. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other

3

specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, a court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular

factors will depend upon the unique circumstances of the expert testimony involved.  *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue.  *See Daubert*, 509 U.S. at 591-93.  This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial.  *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).  Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value.  *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Guided by the foregoing concerns, the Court will consider each of the parties' motions.

**A.  Defendants' Motion *in Limine* Regarding Christina D. Kelly**

Christina D. Kelly is offered by Plaintiffs as their trucking industry expert.  Defendants argue that Kelly's testimony should be excluded because her opinion is not founded upon scientific methodology and because her testimony is a communication of facts that require no special knowledge, training, or expertise.  This Court disagrees.

5

Kelly worked as an over-the-road truck driver for seven years wherein she logged, on average, over 100,000 driving hours per year. She is a Certified Defensive Driving Instructor for the National Safety Council, Professional Truck Driver & Car. She is currently the President of Kelmar Safety Inc., where she specializes in defensive driving courses, safety seminars, Department of Transportation file management, safety program development, and safety audits.

Experts of Kelly's type may opine as to the customs in an industry in order to assist the factfinder in determining whether a defendant has breached a tort duty. *McGowan v. Cooper Indus.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (reversed a jury verdict because the trial court erroneously excluded expert testimony about industry custom in the air-compressor industry because the expert's testimony "was helpful and should have been admitted under Rule 702 as specialized knowledge"); *Maranatha Volunteers Int'l, Inc. v. Golden Giant, Inc.*, No. 98-3076, 1999 U.S. App. LEXIS 10654, at *22 (6th Cir. May 19, 1999) ("standard practices and industry customs are generally relevant to the duty of care"); *Walker v. Jax Mold & Mach.*, Nos. 94-5960, 94-5961, 1995 U.S. App. LEXIS 37024, at *5 (6th Cir. Dec. 6, 1995) ("Due to their extensive practical experience in the relevant industry, the district court did not err in finding that [the experts] were qualified to provide information on industry standards, nor did the court abuse its discretion in determining that their expert opinions would assist the jury."); *Gruenbaum v. Werner Enter.,* No. 2:09-cv-1041, 2011 WL 445508 (S.D. Ohio Feb. 2, 2011) (rejecting *Daubert* challenge to trucking industry expert); *In re Commercial Money Ctr.*, Inc., MDL No. 1490, 83 Fed. R. Evid. Serv. (Callaghan) 232, at *115, 2010 U.S. Dist. LEXIS 90804 (N.D. Ohio July 27, 2010) (rejecting *Daubert* challenge);

Further, expert opinion may be based entirely on experience. As the Sixth Circuit has

explained, if the *Daubert* "framework were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded. Such a result truly would turn *Daubert*, a case intended to relax the admissibility requirements for expert scientific evidence, on its head." *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997) (citation omitted). The Sixth Circuit's insight was later vindicated by the Supreme Court's observations in *Kumho Tire* that "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case"; in some cases "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co.*, 526 U.S. at 141, 150. Therefore, whether "*Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

Here, the Court concludes that Expert Kelly's testimony is reliable and will assist the jury in understanding the evidence. Therefore, the Court **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of Christina D. Kelly.

**B. Defendants' Motion *in Limine* Regarding Joseph F. Donnermeyer, Ph.D.**

Plaintiffs offer Joseph F. Donnermeyer, Ph.D. as an expert as to the customs and nature of the Amish culture. Dr. Donnermeyer offers his opinion as to how these issues effect the damages suffered by L.S. Defendants move to have Dr. Donnermeyer's testimony excluded, arguing that his testimony will not be helpful to the jury because his opinions are not based upon proper foundation, but instead upon speculation, because he has failed to express any opinion to a reasonable degree of certainty, and because his testimony is cumulative. Defendants' arguments are not well taken.

7

Plaintiffs in this action are members of what is known as the Swartzentruber sect, an Anabaptist group with highly conservative views of modernization and the use of technology. The Swartzentruber culture is certainly unknown to the average individual. Dr. Donnermeyer is a professor at The Ohio State University in the school of Environment and Natural Resources, with specialties in criminology and Amish studies. He holds a doctorate degree in sociology, and teaches an annual course in Amish Society. Dr. Donnermeyer has published a number of articles relating to Amish culture, some of which have specifically addressed gender roles and patterns of marriage and reproduction within Amish families. Dr. Donnermeyer has provided a report explaining the history of the Amish and the development of the Swartzentruber sect, the division of labor among Amish men and women, and the specific chores and duties that L.S. would be expected to perform throughout her life as a member of the Swartzentruber community.

Dr. Donnermeyer testified that, in compiling his report he relied upon his knowledge and experience as a researcher of Amish culture, and he performed a review of various articles and academic literature pertinent to L.S.'s situation. He interviewed L.S.'s mother, to account for any variances between L.S.'s home specifically and those of the typical Swartzentruber family to determine the amount of time L.S. would perform tasks she is expected to complete now, and throughout her life. Defendants claim that Dr. Donnermeyer's estimates are speculative because he based them on L.S.'s home life, where she has eleven siblings, instead of basing the estimates upon the typical range for a Swartzentruber family, which is five to eight children. This argument goes to the weight of the evidence, however, not its admissibility, and is a proper subject matter of cross examination.

Defendants further argue that Dr. Donnermeyer's "testimony will be identical to that of Mrs. Slabaugh in her description of the daily chores of an Amish child and Amish homemaker." (ECF No. 61 at 7.) This Court disagrees with that assessment. As Plaintiffs correctly point out, Mrs. Slabaugh was born into a Swartzentruber lifestyle, which is all she has known throughout her life. She has no knowledge or means by which to compare her lifestyle to that of a jury member. Nor does she have Dr. Donnermeyer's experience and education as to overall Swartzentruber culture, but instead can speak only to her own home and individual experience. She is unable to testify as to any trends in Amish ages of marriage and childbearing, nor to the typical Swartzentruber family size and gender roles. The Court finds that Dr. Donnermeyer's explanations in this regard will assist the jury in determining L.S.'s future damages.

Defendants' final argument as to why Dr. Donnermeyer's testimony should be excluded is that he failed to express any of his opinions to a reasonable degree of certainty. Reviewing Dr. Donnermeyer's report and deposition testimony leads this Court to a different conclusion. Simply because Dr. Donnermeyer was not familiar with the term "reasonable degree of certainty," does not indicate that he does not hold his opinions to that standard. If Defendants believe a certain opinion of Dr. Donnermeyer's is not held to a reasonable degree of certainty, Defendants may question him about that opinion during trial.

Based on the foregoing, the Court concludes that Dr. Donnermeyer's testimony will assist the jury to understand the evidence and to determine L.S.'s future damages. Thus, the Court **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of Joseph F. Donnermeyer, Ph.D.

**C. Defendants' Motion *in Limine* Regarding Drs. Burke and Ward**

Dr. Burke has issued an opinion regarding the cost of L.S.'s future medical care and support services. Defendants argue that Dr. Burke's opinion must be excluded because it is based upon facts not in evidence and on speculation.[1] This Court disagrees.

Dr. Burke opines that L.S. will need future surgeries, including one on her leg, occupational therapy, and a home health aid for a certain number of hours per day. Defendants contend that Dr. Burke's opinion is speculative and based upon facts not in evidence because L.S.'s parents have not yet agreed to allow L.S. to have the leg surgery, nor have they ever sought the services of a home health care aid. Defendants conclude that L.S.'s parents' past action, or inaction, show that the suggested surgeries and treatments will not take place. This argument, however, goes to the weight to be given the evidence, not its admissibility. Defendants will be given the opportunity to cross examine the doctors to determine if the surgeries are likely to be needed, the parents to determine if they intend to allow the future surgeries and/or the suggested home health care aid, and why they did not obtain a home health care aid since L.S.'s injury.[2] This Court's gatekeeper role is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

---

[1]Defendants also argue that some of Dr. Burke's opinion is based upon Dr. Donnermeyer's report, which they have also moved *in limine* to exclude. This Court, however, has denied that motion, rendering Defendants' argument in this regard unpersuasive.

[2]The Court notes that it is hardly fair to rely on L.S.'s parents' past inaction related to hiring a home health care aid when they have no insurance nor any apparent means by which to engage a home health care aid.

As to Plaintiffs' economic expert, John Ward, Ph.D., Defendants argue that his reports are inadmissible because his figures are based upon the information in Dr. Burke's reports, which are inadmissible. Because the Court finds that Dr. Burke's opinions are not properly excluded, Defendants' argument is not well taken.

Accordingly, the Court **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of William H. Burke, Ph.D and John Ward, Ph.D.

## D.  Plaintiffs' Motion *in Limine* Regarding John Goebelbecker

Plaintiffs argue that John Goebelbecker's opinion should be excluded to the extent that he relies upon a study he titled "Driver Behavior Study," and to the extent that he opines that L.S. would not have been injured if she had been wearing a seat belt. This Court agrees. However, to the extent that Goebelbecker's opinion regarding the reasonableness of truck driver Scarano's action does not rely on the Driver Behavior Study, it is admissible.

It is undisputed that at the time of the collision, Scarano was attempting to pass the horse drawn buggy in which L.S. was a passenger. Scarano was ticketed at the scene for violation of the Ohio law that prohibits passing within 100 feet of an intersection. Defendants have offered Goebelbecker, at least in part, to opine about the reasonableness of Scarano's action in passing the buggy. Goebelbecker conducted the Driver Behavior Study, about which Defendants explain:

> Mr. Goebelbecker conducted a Driver Behavior Study on December 20, 2010 wherein he drove a car, equipped with a flashing amber light, traveling northbound on U.S.-62 at approximately 10 m.p.h. approaching the intersection with Deal Road. Mr. Goebelbecker sought to observe the behavior of motorists when approaching a slow-moving vehicle in the location where the collision between Mr. Scarano and Ms. Slabaugh occurred. Specifically, he wanted to address the issue of "what do reasonably prudent drivers do when confronted with a slow-moving vehicle on Route 62 as they approach Deal Road." (Exhibit B) (John Goebelbecker Depo. Tr. p. 112.)

11

> So I set up a test that included a small vehicle with a flashing beacon to communicate to approaching drivers that the car is not traveling normally, i.e., it's moving slowly like a surveyor or a highway worker; and, secondly, when the vehicle in -- when the approaching vehicle is in proximity to Deal Road, the small vehicle was moved forward at about 15 miles per hour within about 100 feet of the intersection.
>
> I attempted to avoid using brake lights or flashers or turn signals to provide any additional information to the approaching drivers, and the test was videotaped. I videotaped the response of all the drivers from an inconspicuous location so as not to alter their response. I was the driver of the small vehicle. It was a Nissan Versa, I believe, and an independent insurance adjuster assisted me. I don't remember his name, but he's the fellow that did the videotaping from the driveway.
>
> (*Id.* at 112-13.)

(ECF No. 74 at 4-5.)

From this study, Goebelbecker extrapolated his opinion that reasonably prudent drivers on the stretch of highway at which the collision occurred pass within 100 feet of the Deal Road intersection, that is was the norm to pass within 100 feet of the Deal Road intersection, and that it was reasonable for Scarano to do so. The Driver Behavior Study, and any opinion extrapolated therefrom is unreliable and inadmissible.

As Plaintiffs correctly point out, the Driver Behavior Study fails to meet any of the four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable that were set out in *Daubert*. Specifically: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. Defendants argue

12

that the four enumerated *Daubert* factors are not the only factors that this Court may consider. While this is a true statement, Defendants do not offer any other factors to bolster the reliability of the Driver Behavior Study, nor can this Court find any. Goebelbecker took his isolated experience to extrapolate an opinion as to the "norm" of reasonably prudent drivers. The study completely lacks any reliable methodology.

Even if, however, Goebelbecker's Driver Behavior Study was reliable, it would be inadmissible because it is not relevant. Defendants argue that the "relevance requirement ensures that there is a 'fit' between the testimony and the issue to be resolved by the trial. . . . Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant." (ECF No. 74 at 4) (citing to *Tolstih v. L.G. Elec. USA, Inc.*, 2009 U.S. Dist. LEXIS 98676, *8-9 (S.D. Ohio Oct. 2, 2009); *Daubert*, 509 U.S. at 590). While, again, this is a true statement, it does not describe the situation *sub judice*. That is, there is no "fit" between Goebelbecker's Driver Behavior Study and Goebelbecker's opinions based upon that study and the issues to be resolved at trial. The conduct of vehicles passing a slow moving car (with a back window, rear and side mirrors, brake lights, and turn signals[3]) on one specific afternoon is of little consequence to the possible conduct of those same vehicles passing a horse drawn buggy (with no back window view, no rear or side mirrors, and no brake lights or turn signals). As Plaintiffs correctly argue, it is impossible to evaluate the basis of the decision-making of the drivers who passed Goebelbecker during the study or to know how the different variables just mentioned impacted a driver's decision to pass illegally.

---

[3]Although Goebelbecker "attempted" not us utilize his brakes or turn signals, he does nothing to account for the fact that each passing vehicle would have reasonably anticipated that the vehicle he drove possessed brake lights and directional signals.

As to Defendants argument that Goebelbecker's opinion regarding the reasonableness of Scarano's actions based on information other than the Driver Behavior Study, that opinion is admissible. That is, Defendants posit:

> Mr. Goebelbecker's opinion was not based upon the Driver Behavior Study. Rather his opinion was based upon an inspection of the scene; aerial photograph and mapping – AIRMAP; the deposition transcripts of Joseph Scarano, [V.S.], and [N.S.]; ECM data obtained from the tractor-trailer; Qualcom Critical Event Report; and numerous other documents. (Goebelbecker Report, p. 1.) It was Mr. Goebelbecker's analysis of these documents which provided the foundation for his opinion that Mr. Scarano's decision to pass the Amish buggy was reasonable.

(ECF No. 74 at 7-8.) Plaintiffs, of course, will be free to cross examine Goebelbecker on the bases of his opinion.

Plaintiffs last argument relates to Goebelbecker's anticipated testimony that L.S. would not have suffered the injuries she incurred if she had been restrained with some sort of seat belt. Plaintiffs contend that this testimony places a burden on Plaintiffs that does not exist under Ohio law. Plaintiffs argue that, absent a statute to the contrary, there is no duty to anticipate another's negligence and to protect one's safety by wearing a safety device. (ECF No. 66 at 8) (citing *Roberts v. Bohn*, 26 Ohio App.2d 50, *rev'd on other grounds sub nom. Suchy v. Moore*, 29 Ohio St.2d 99 (1972)). This Court agrees.

There is no law in Ohio requiring buggies to be equipped with seatbelts. As an Ohio appellate court has explained, in a case that was decided before it became the law to wear seat belts:

> As in *Roberts v. Bohn*, we conclude, as do the majority of states, that the failure to use seat belts does not constitute a ground for contributory negligence. The adoption of the comparative negligence statute was not intended to give rise to a defense that did not exist before the statute was adopted.

*Mackey v. Buchanan*, No. E-85-20, 1986 WL 2336, at *3 (Ohio Ct. App. Feb. 21, 1986).

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion *in Limine* to Limit the Testimony of John Goebelbecker.

### IV. Conclusion

For the reasons set forth above, the Court:

(1) **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of Christina D. Kelly (ECF No. 59);

(2) **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of Joseph F. Donnermeyer, Ph.D. (ECF No. 61);

(3) **DENIES** Defendants' Motion *in Limine* to Exclude the Testimony of William H. Burke, Ph.D and John Ward, Ph.D. (ECF No. 62); and,

(4) **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion *in Limine* to Limit the Testimony of John Goebelbecker (ECF No. 66).

As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

                                      **/s/ Gregory L. Frost**
                                      **GREGORY L. FROST**
                                      **UNITED STATES DISTRICT JUDGE**